Attorney Ray is here on behalf of the appellant and Attorney Sunderman is here on behalf of the appellee. Mr. Ray, you may begin. Thank you, Your Honor. I plead the court and counsel. Greg Ray for the appellant, Jim Kinierim. Mr. Kinierim is a retired alderman or councilman on the City of Casey City Council. The dispute in this case involves the question of whether the City Council can, in 2010, three years after he retired, reduce the benefits that he had otherwise enjoyed with regards to paid health insurance coverage. We feel there's a case that's very close on point from the 3rd District involving the City of Streeter cited and discussed both at the trial and appellate court level. I've asked Lee to present an additional authority I became aware of recently. It's actually out of the 3rd District. I think my motion referred to 2nd. I may have assumed anything from the Chicago area had to be 2nd, but it is a 3rd District Will County case involving the City of Joliet. Yes. And I think it's an important case because it helps tie together two concepts that I think are applicable here that lead to the result that I think you should reach here. And that is that the idea of equitable estoppel as the theory that we proceeded under is actually very much tied to contract rights. In other words, if you look at an equitable estoppel theory as simply being one way to look at what is in essence a contract, you end up at the same place with the same analysis. And let me tell you what I mean by that. In a contract, you basically have to have consideration flowing from one part of the other and back to the first. In equitable estoppel, you need an affirmative act, at least in the context of municipalities. That's its offer of consideration. And you need a change in position in reliance on that act. And that's the furnishing of services in this context by the officeholder to serve on City Council. So when you go through that analysis here, I think you conclude that if you think of this as an employment contract as a City Councilman, one of the compensation elements provided was this package involving retirement benefits. It is deferred compensation. No less than any pension that he gets, which by the way, he does get. Because in order to qualify for the health insurance coverage under the plan that's sponsored by the state, you also have to be a recipient of a pension from the IMRF. And he is, there's no dispute about that. So the city has generated an affirmative act by passing the program and putting it into existence. It's made an offer of compensation. It amounts to consideration for him to accept by accepting the office. He was actually first appointed and then elected. So if you look at it that way, I think you come up with basically the same end point that you do with the collective bargaining agreements that are the subject in the Marconi v. City of Joliet case. And that also was apparently an element in the City of Streeter case. Now the City of Streeter case involved a situation where there were employees that were collective bargaining agreement employees and there were non-collective bargaining agreement employees and former office holders. That last two categories were the plaintiffs in that case and they're the ones that prevailed. There seemed to be some discussion in the appellate court's thinking as to, well, we really shouldn't treat non-CBA employees different than CBA employees. I'm not sure why that makes any difference, but the significant point I think is the concept of vesting. And I think that's really the key to where your decision is here today. Because keep in mind, we're here on cross motions for summary judgment. There really are no disputes on the facts. And what we're here for is an issue of law of whether this right, I'll call it that, to the pre-insurance coverage, health insurance coverage into retirement has or has not vested. If you look at the City of Joliet case, the court there concluded, because the record was incomplete, they couldn't make a decision whether there was something in a collective bargaining agreement situation that would change what they concluded was otherwise the appropriate rule, which is, if you as a public servant have entered into an employment arrangement with a public entity, and they've paid you compensation, and you've given them service, and they made a promise as part of that compensation package to give you retirement benefits, and you've completed your service, and you've now retired, you're vested. That's the basic rule the City of Joliet opinion suggests, states, and only said, do we know for sure from this record enough to say that it applies here? Answer, no, we send it back. Now, I think the analysis on vesting here is the following. First, there's argument made in the briefs that, well, the City of Casey could have changed its compensation package for current members of the City Council. It could have changed it, perhaps, while Mr. Connerum was on the City Council. But the point is, it didn't. It's just like a collective bargaining agreement. They typically have two or three or five-year terms. You might enter employment with a city in Contract A's term, and it runs out, and Contract B three years later has different provisions in it. And you continue to work under Contract B and C and so forth. Can the city and the collective bargaining unit reach different agreements from one contract to the next? Of course they can. And could that have a bearing on whether something vests that relates to an employee who started under Contract A? Of course it can. But the point is that here the City of Casey didn't change anything for Mr. Connerum while he was serving. And by the time he reached retirement, he had done his duty. He had completed the project from his perspective. From a contract concept point of view, he has given his full consideration. Now, if we look at the case that the Supreme Court issued several years ago, the Armstead case, the Armstead opinion talks about it's difficult to describe what's a vested right. And acknowledges that the courts tend to say, well, it's vested if you can't change it, and it's not vested if you can, which is a circular argument, which takes you nowhere. But what that court said was, a vested right can be described as a complete and unconditional demand. Now, that's in the context of a contract. Now let's make it in the context of an employment contract. I'm an employee. I'm an officeholder. I've been promised something. I've delivered. I've completed my work. I've completed my work, a complete demand. I've given my consideration. The city's promised it. Can it now retroactively change? This promise you're talking about is just an ordinance, though, isn't it? Sure. Well, an ordinance can be changed. So how can that be a promise? It can only be changed if it does not affect a vested right, and that's where we are right now. In January of 2000, your client voted to increase the minimum years of service for retirement benefits from four to six years, correct? Correct. Well, wouldn't that have affected people who had already retired when they changed that ordinance, then, if your client voted in favor? If it did, and I don't know that there's any such person they didn't elect to pursue the subject. It could have, though. You, I think, have to concede that, don't you? No. I think that if somebody retired with five years of service, and then they changed it to six, he's vested, or she's vested. No, I don't think that ordinance could change somebody who's done everything they were called upon to do under the ordinance, or ordinances, which granted them their pay, their current compensation, and their deferred compensation. What would be the best case, or the best argument, that someone who runs for office, over whom the city has little or no regulatory control, it's actually the opposite, an elected officeholder, somehow becomes an employee of the city, simply because they receive some compensation, and some benefits, because they hold that elective office? Well, I think that's because that's what the statutes contemplate. The statutes include the pension programs that I think municipalities, I'm not sure 100% of them, but certainly most of them are involved with the IRF. It includes the health insurance program run through a state statute by the state of Illinois in this particular case. So, and certainly city council people and other elected officials are agents of, they have the ability, when they have the authority, to bind the municipality. But is that because they're employees in the municipality? I mean, receiving a benefit which flows in the working world to employees, does that make you an employee? I think it does, and I think there's a case that describes a highway commissioner of a township as an employee of the township, even though he is a sui generis elected official. I don't have the citation handy, but I do believe that's the law of townships, and so I think it would also apply to any elected official in a different municipality. Back to the collective bargaining analogy, the security you have is based upon a contract which has a duration. The security you have as a councilman is based on what? The ordinance changing or not changing? I mean, you have the security of you're going to be an alderman until the next election, but whatever promises are made, whether they're in the form of pensions or health insurance benefits, what if it's a car? And you've been an alderman for six years, and everybody that's an alderman for six years gets to keep and drive a car during their term of office, and then the city says, we can't afford that anymore. Is that a best? I mean, we know for employees and businesses that have to have cars to perform their service that that's a pretty important accoutrement of their employment, but the city can change that without thinking about it. No, they can't, because the statutes say you have to set the compensation for city council and other elected officials 180 days before the start of that term. So in mid-term, the city can't take away the vehicle. They can do it today to be effective for the next term. How about free membership at the Children's Discovery Museum for all aldermen and their families? Can they take that away? Because the Children's Discovery Museum, which is subsidized by the town council, is going to go under unless they raise revenue. I think that's a different issue, because that membership probably isn't income taxable, and therefore probably isn't compensation, and probably isn't recognized like health insurance is in the income tax code as something that you can get from an employer without having to pay tax on it. You don't do domestic relations law, but we always say we don't really care what the IRS says about what's an asset, what's depreciated, what should be treated as income when we're trying to figure out child support. So I'm not particularly impressed by references to the IRS, but I understand your point that it's enough different. Yeah, I think that's not compensation, at least in either common talk or IRS talk. This case comes to you on cross motions for summary judgment. The Marconi v. City Zodiac case just came out in May, so it wasn't available to the Circuit Court, but the Dell v. City Streeter case was. And I think the efforts by the Circuit Court to distinguish this situation from Dell just simply don't comport with the admitted facts. The opinion in Dell says more than one time the plaintiffs in that case include former office holders. They don't say that they're councilmen, but other than a mayor, I don't think there are any other office holders in the city system. So yes, it had to include people in the exact same situation as Mr. Connero. It is a persuasive authority. Is the case favorable to your position that does not in some way involve employees who were members of a union? Well, the Dell case, plaintiffs' employees were non-union. And the court there was saying, how can we treat them who don't have a collective bargaining agreement different from those who do? And what happened there is the city in that case did not attempt to modify the retirement rights under the collective bargaining agreement. It's probably because they were told they can't. That was interesting to start with, because one difference might be you chose to be in a union and had that afforded to you, and you didn't, or it wasn't available to you, so we treat you differently. Because collective bargaining means the group of people who collect together to bargain get benefits that other people don't. And that's why I suggest to you that despite the distinction between equitable estoppel and its set of elements, they're really very much the same and in this context identical to if we had a contract. And you end up with the same question at the bottom of the page, which is, is this a vested right? And I think the answer becomes, again, yes, because he completed his term, he did everything he was called upon to do in that bargain. He had a bargain, just like the zoning people disputes have bargains with the city. We're going to pay you a building permit, we're going to spend money, and if we've substantially changed our position, you can't now change your zoning ordinances. Do equitable estoppel cases talk about vesting? Yes, they do, including the Dell case and including the zoning cases. The Furniture LLC v. City of Chicago case talks about that. And in fact, there's one case, I don't remember the specific name, I think it's Village of Bellwood, notes that that was an eminent domain case. And it couldn't apply equitable estoppel because it's a purely statutory proceeding. The statute doesn't allow any relief for this guy, they got caught in the middle. There was a concurring opinion that was directed to the legislature, apparently ignored. Hey, this isn't fair. We can't apply equitable estoppel because we're dealing with a statutory creature. So yes, very much of that. Are there any other questions? Thank you. Thank you, Mr. Ray. Mr. Sunderman? Good morning, I'm Tony Sunderman, it's my privilege to be here on behalf of the City of Casey. Counsel, to please the court, let me address the issues in a little different light. First of all, I should tell you, the City of Casey, for those of you who have spent any time there, is a small community of about 2,500 people in Clark County, Illinois, due west of Terre Haute, Indiana on Route 70. It is an aldermanic form of government and has been an aldermanic form of government for many, many years. The plaintiffs in this case are aldermen, they're not employees of the city. They participate in IMRF, the Illinois Municipal Retirement Fund, as do many council members of small communities, because they can do so if they work 600 hours in the course of a year in furtherance of their aldermanic efforts. At one time, as you are aware, the city provided participation for aldermen to obtain health insurance. The first plan provided that an alderman with four years of service would have half his premium paid. If he served eight years, 100% of the premium would be paid. If he served 15 years, 100% of the premium for his spouse and all dependents would be paid. That was as of June of 1998. That was just shortly before Mr. Knierim, about six months before Mr. Knierim, went on to council. Now remember, at the time Knierim went on, four years of service was required and Knierim was appointed to fill in a vacant term. He didn't have the opportunity of four years from the date he was appointed to qualify anyone. In the year 2000, they changed the plan, as Justice Turner observed. In the year 2002, they modified the plan. And finally in 2010, the costs were such that they simply abolished the plan for all purposes and allowed those who were participating in the plan to pay their portion of the cost of coverage. Just like on July 1 of this year, retired judges of our state now pay a portion of their insurance premium, at least until the MAG decision is resolved. And will that case control this case, do you think? I don't know the answer to that. I've thought about it, to be honest with you. Aldermen are different from judges in many, many ways. Their position constitutionally is different. But there's another case involving non-judges, the people who took early retirement from the state based on a promise of free health insurance for the rest of their lives. I think that's going to end up there, too. I don't know the answer to that question. I know that in essence the MAG case is closer to this one than the retired state employees who had in many instances contractual rights vested under collective bargaining agreements. But remember, these aldermen had no collective bargaining agreement, and that's significant. They had no contract at all. The fact that this council and these aldermen voted to change their own rights under the statute, in my mind, clearly supports the trial court's decision that estoppel was not applicable. And the estoppel argument that their rights vested in some way is simply not supported by the evidence. It's not supported because, as you'll note, the trial court in its well-thought-out memorandum recited the modifications to the ordinance. The trial court had before it the actual contract between the state of Illinois and the city. It's Exhibit A to the Motion for Summary Judgment. Take a look at that, because that exhibit precludes vesting. The contract that the city had provided that the director of the program, who was a CMS employee, could terminate the program without cause on 60 days' notice. How do you vest anything on a contract that can be terminated in 60 days? I would respectfully suggest you can't. Not only did these plaintiffs vote to modify the plan from time to time, they had a plan that was strictly subject to continued state approval. The 2,500 people in Casey, Illinois, didn't fund this plan for these fellows. This plan was funded by employees of the state of Illinois. All of the CMS people and participants in local government funded this program. And CMS administered it in accordance with their, I don't want to use the term whims, but under the contract, they could terminate it. How do you vest rights when they're terminable? The contract provided also that the annuitants, and I believe it's at page 20 of that exhibit, that the annuitants have the right upon retirement to pay the insurance themselves. That was a condition. They had to have that right. Specifically, the contract said annuitants may make their payments if they elect, and the plan has to allow it. Now, Mr. Ray, who is a wonderful lawyer, read the advance sheets and I didn't, so he got the City of Joliet case before I did. I read the City of Joliet case. It is strictly limited. It's a troubling case, but I'll talk about that in a minute. Not troubling to me in my position, because I don't think it changes the city's position at all. That case relates solely to the vesting of rights under a collective bargaining agreement, and there is no dispute that that's not the case here. A collective bargaining agreement is an entirely different animal, and it applies to employees. The municipal aldermen are not employees of the city. There's an old Supreme Court case dated from 1914, which I looked up after I read Mr. Ray's supplement, Gatherman, G-A-T-H-E-M-A-N-N, a 1914 case involving officers of the City of Chicago. Never been cited again. The case says clearly municipal officers are not employees. People appointed to those positions are not employed as employees. They're not union members, clearly. The collective bargaining agreement and the rights attended to those people who relied on the employment agreement is entirely different than any rights the aldermen have to participate in an insurance program funded and administered by CMS. And I would respectfully suggest that the argument of vesting is simply not true. In order to invoke equitable estoppel, Mr. Ray suggested that there has to be an offer, there has to be an acceptance of that offer, and there has to be no knowledge on the part of the offeree that the offer's wrong or flawed or that there's something about to happen to them if they rely upon this offer. It won't go bad. In 1996, the Attorney General of the State of Illinois, the highest level law enforcement officer we have, addressed the very issue of whether aldermen could have their insurance terminated and be made to pay for it. In an opinion addressed by James Ryan to the State's Attorney of McLean County, the Attorney General said the cities may, if they so elect, end the payment of health insurance premiums and allow the aldermen the option of paying for it themselves if they want to keep it. That's two years before the city adopted the CMS plan it did. And when it adopted the plan, it reflected the Attorney General's opinion. People can continue insurance if they want to, if they pay for it themselves. There is no issue about vesting in this instance. The trial court was correct when it analyzed the contract, when it analyzed the conduct of the plaintiffs in tinkering with their own plan and ruled they can't be estoppel. And for that reason, Your Honor, the trial court should be affirmed and the opinion is correct factually and legally on the evidence before it. And it is summary judgment. It's a de novo review. All the evidence is before the court and I would respectfully suggest the trial court was correct. Are there any questions? I'd be glad to address any concerns. I don't see any. Thank you, Mr. Sunderman. Thank you, Counsel. Mr. Ray, any rebuttal? Thank you. The only way a city can act on any contract, whether it's a collective bargaining agreement, an agreement with somebody to mow a lawn, or set compensation for city councilmen, is through legislative action, typically an ordinance. So the idea that there's something different or distinct about an agreement to pay under a collective bargaining agreement from an agreement to pay compensation to a councilman is not a valid distinction because they all have to arise out of legislative action, generally in the form of an ordinance. In these cases, to some extent motions, but they have the same legal effect and there's no dispute that these are legally binding on the city. So I come back to this is really very much on point to be a contract argument, no less, and there's no distinction in essence to equitable establishment. Now, the MAG decision was mentioned. I do not offer any comments there. I've not tried to get any handle on where that one's headed. Mr. Sunderman, I speculated we had been set for orals in May. I wonder if we're getting kicked until the MAG decision comes out that we came up today. The point that the city can and did change these ordinances or these programs while Mr. Connerum was an officer or was on the council is certainly true. There's no dispute about that. But the point is, whether it's the City of Joliet case or any of these other retirement cases, is once you're retired, that door's closed as to the deal that retiree has. If you're not retired yet, then you're still vulnerable. But Mr. Connerum was in 2010 and had been for several years. There's no dispute he met the qualifications under the plan as it existed at the time he retired. It did change from four years to six years, but he served more than the six years. So the plan became more onerous on him during the term of his being on the council, but he still met it when he retired. That's when the door closed, to use a more vernacular term, or, legally, he vested. So with regard to this contract with the state that administers this health program, keep in mind two things. First of all, that contract hasn't been terminated. And so the idea that maybe it could be and that could divest all of the participants in that plan with whatever rights that plan gives them simply doesn't apply by its facts here. It's not happening, just like it didn't happen that the city changed Mr. Connerum's program before he retired. They could have, but they didn't. So, again, we have agreement that we're here on summary judgment. The circuit court just got it wrong. I would ask that you reverse and enter an appropriate order for me. Thank you. Thank you, Mr. Ray. Court will be in recess, and we'll take this matter under advisement.